1
2
3
4
5
6
7
8       **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA**

10      **WESTERN DIVISION**

11

12   MICHELLE PROCTOR,                    )    No. CV 14-7437-PLA
                                          )
13                    Plaintiff,          )
                                          )
14           v.                           )    **MEMORANDUM OPINION AND ORDER**
                                          )
15   CAROLYN W. COLVIN, ACTING            )
     COMMISSIONER OF SOCIAL               )
16   SECURITY ADMINISTRATION,             )
                                          )
17                    Defendant.          )
     _____)

18

19                                     **I.**

20                             **PROCEEDINGS**

21          Plaintiff filed this action on September 29, 2014, seeking review of the Commissioner's

22   denial of her application for Supplemental Security Income ("SSI") payments.  The parties filed

23   Consents to proceed before the undersigned Magistrate Judge on March 13, 2015, and March 18,

24   2015.[1]  On February 11, 2015, plaintiff filed a Memorandum of Points and Authorities in Support

25   of Relief Requested in Plaintiff's Complaint ("Plaintiff's Brief" or "PB"), addressing the disputed

26   _____

27          [1]    The parties filed Consents to proceed before the previously assigned Magistrate Judge on
     December 2, 2014, and March 11, 2015.  This matter was reassigned to the undersigned Magistrate
28   Judge on March 12, 2015, and the prior consents were vacated.

1  issues in the case.  On March 6, 2015, the Commissioner filed Defendant's Brief in Opposition to

2  Complaint ("Opposition" or "Opp'n").  On March 11, 2015, plaintiff filed a Reply Memorandum

3  ("Reply").  The Court has taken these submissions under submission without oral argument.

4

5                                          **II.**

6                                    **BACKGROUND**

7         Plaintiff was born on September 28, 1969.  [Administrative Record ("AR") at 26, 103.[2]]  She

8  has no past relevant work experience.  [AR at 26.]

9         On June 1, 2009, plaintiff filed an application for SSI payments, alleging that she has been

10 unable to work since December 24, 2005.  [AR at 131, 251.]  She subsequently amended her

11 alleged onset date to June 1, 2009, the date the application was filed.  [AR at 18, 131.]  After her

12 application was denied initially and upon reconsideration, plaintiff timely filed a request for a

13 hearing before an Administrative Law Judge ("ALJ").  [AR at 131, 163-64.]  A hearing was held on

14 August 22, 2011, at which time plaintiff appeared represented by an attorney, and testified on her

15 own behalf.  [AR at 100-25.]  A vocational expert ("VE") also testified.  [AR at 116-24.]  On

16 September 9, 2011, the ALJ issued a decision concluding that plaintiff was not under a disability

17 from June 1, 2009, the date the application was filed.  [AR at 131-39.]  Plaintiff requested review

18 of the ALJ's decision by the Appeals Council.  [AR at 187.]

19        On January 3, 2013, the Appeals Council granted the request for review "under the error

20 law provision" of the regulations, vacated the September 9, 2011, decision, and remanded the

21 case to an ALJ to address the third-party function report of Tyasha Johnson and to consider

22 indications of excessive body weight.  [AR at 144-45.]  In addition, the Appeals Council ordered

23 the ALJ on remand to:  (1) "[e]valuate the treating and nontreating source opinions . . . ,

24 nonexamining source opinions . . . , and other source opinions . . . , and explain the weight given

25

26   [2]   Although the ALJ indicated that plaintiff's date of birth is September 8, 1969 [AR at 26], and her
27 SSI application also reflects that date [AR at 251], plaintiff testified at the August 22, 2011, hearing that
   her birthday is September 28, 1969.  [AR at 103.]  Medical records also reflect that date.  [See, e.g.,
28 AR at 401, 417.]

                                          2

to such opinion evidence"; (2) "consider the indications of excessive body weight"; (3) "[g]ive further consideration to [plaintiff]'s maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations"; and (4) "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [plaintiff]'s occupational base." [Id.]  The Appeals Council further ordered the ALJ to "offer [plaintiff] an opportunity for a hearing, [and] take any further action needed to complete the administrative record and issue a decision."  [AR at 145.]

On March 4, 2013, a second hearing was held before the same ALJ, at which time plaintiff did not appear.  [AR at 95-99.]  Plaintiff's attorney represented at the hearing that plaintiff "was arrested and in jail at the moment," and requested that the hearing be rescheduled.  [AR at 97.] The ALJ rescheduled the hearing.  [AR at 99.]

On April 15, 2013, a third hearing was held before the same ALJ, at which time plaintiff appeared represented by an attorney, and testified on her own behalf.  [AR at 68-94.]  In addition, a third party witness and a different VE testified.  [AR at 82-92.]  On April 26, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from June 1, 2009, the application filing date.  [AR at 18-27.]  When the Appeals Council denied plaintiff's request for review on July 30, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

1   conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

2   and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

3   (same).  When determining whether substantial evidence exists to support the Commissioner's

4   decision, the Court examines the administrative record as a whole, considering adverse as well

5   as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted);

6   see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

7   consider the entire record as a whole and may not affirm simply by isolating a specific quantum

8   of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is

9   susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,

10  528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin.,

11  466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

12  ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.")

13  (citation omitted).

14

15                                        **IV.**

16                          **THE EVALUATION OF DISABILITY**

17          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

18  to engage in any substantial gainful activity owing to a physical or mental impairment that is

19  expected to result in death or which has lasted or is expected to last for a continuous period of at

20  least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

21  1992).

22

23  **A.     THE FIVE-STEP EVALUATION PROCESS**

24          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

25  whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

26  828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

27  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

28

                                        4

claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 1, 2009, the application filing date. [AR at 20.]  At step two, the ALJ concluded that plaintiff has the following severe impairments:  "[m]ood disorder NOS [not otherwise specified]; anxiety disorder NOS; panic disorder with agoraphobia; and morbid obesity." [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 22.]  The ALJ further found that

1    plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in

2    20 C.F.R. § 416.967(c),[4] "reduced since the prior decision due to obesity," that requires "only

3    simple repetitive tasks, no greater than occasional interaction with supervisors, coworkers, and

4    the public; and . . . no rapid paced high production quota."  [AR at 23.]  At step four, the ALJ

5    concluded that plaintiff has no past relevant work.  [AR at 26.]  At step five, based on plaintiff's

6    RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in

7    significant numbers in the national economy that plaintiff can perform, including work as a "laundry

8    worker" (Dictionary of Occupational Titles ("DOT") No. 361.685-018), and "warehouse worker"

9    (DOT No. 922.687-058).  [AR at 27, 87-90.]  Accordingly, the ALJ determined that plaintiff was not

10    disabled at any time since the application filing date.  [AR at 27.]

11

12    **V.**

13    **THE ALJ'S DECISION**

14         Plaintiff contends that the ALJ erred when she:  (1) rejected the opinion of plaintiff's treating

15    psychiatrist, Vida Parsa, M.D.; (2) determined plaintiff's mental RFC; (3) addressed the third party

16    evidence from Tyasha Johnson; and (4) rejected plaintiff's subjective symptom testimony.  [PB at

17    1, 6, 8-9.]

18         As set forth below, the Court agrees with plaintiff and remands for further proceedings.

19    /

20    /

21

22

23

24        [3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the

25    five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007)

26    (citation omitted).

27        [4]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she

28    can also do sedentary and light work."  20 C.F.R. § 416.967(c).

1  **A.  MEDICAL OPINIONS**

2  **1.  Legal Standard**

3  "There are three types of medical opinions in social security cases:  those from treating

4  physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec.

5  Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 416.902, 416.927. "As a general

6  rule, more weight should be given to the opinion of a treating source than to the opinion of doctors

7  who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th

8  Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222

9  (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than

10 the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

11 "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical

12 opinion based on clear and convincing reasons."  Carmickle, 533 F.3d at 1164 (citation and

13 internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

14 "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate

15 reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164

16 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763

17 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012.  The ALJ can meet the requisite

18 specific and legitimate standard "by setting out a detailed and thorough summary of the facts and

19 conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157

20 F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than the

21 [treating or examining] doctors', are correct."  Id.

22

23 **2.  Dr. Parsa**

24 Dr. Parsa, plaintiff's treating psychiatrist at Ventura County Behavioral Health [see, e.g.,

25 AR at 425, 446], treated plaintiff four times between December 22, 2010, and June 10, 2011 [AR

26 at 425-27, 430], prescribed medication to plaintiff during that time period [AR at 420-21], and had

27 access to plaintiff's treatment records from Ventura County Behavioral Health where she had been

28

1  treated since approximately September 2009.  [See AR at 357, 446.]  In December 2010, Dr.

2  Parsa assessed plaintiff with mood disorder, not otherwise specified, and rule out major

3  depressive disorder with psychotic features.  [AR at 430.]  In June 2011, Dr. Parsa assessed

4  plaintiff with mood disorder, not otherwise specified, anxiety disorder, not otherwise specified, and

5  panic disorder with agoraphobia.  [AR at 425.]

6      On August 12, 2011, Dr. Parsa completed a Mental Impairment Questionnaire.  [AR at 440-

7  46.]  In that questionnaire, Dr. Parsa diagnosed plaintiff with mood disorder, NOS, anxiety

8  disorder, NOS, and panic disorder with agoraphobia, and also indicated that plaintiff had a global

9  assessment of functioning ("GAF")[5] score of 50-55.[6]  [AR at 440.]  Dr. Parsa identified the following

10  signs and symptoms associated with the diagnoses:  weight change; sleep disturbance; mood

11  disturbance; emotional lability; perceptual disturbances ("sees shadows"); social withdrawal or

12  isolation; delusions or hallucinations ("[t]hinks people are watching her"); substance dependence;

13  recurrent panic attacks; paranoia or inappropriate suspiciousness; persistent irrational fears;

14  generalized persistent anxiety; and hostility and irritability.  [AR at 440-41.]  Dr. Parsa described

15  the clinical findings as "[a]nxiety around people, isolating herself for that reason."  [AR at 441.]  On

16  August 12, 2011, Dr. Parsa also completed a Medical Source Statement (Mental) form.  [AR at

17  447.]  In that form, Dr. Parsa indicated plaintiff's diagnoses of mood disorder, not otherwise

18  specified, anxiety disorder, not otherwise specified, and panic disorder with agoraphobia.  [Id.]

19  In both forms, Dr. Parsa assessed plaintiff's functional work-related limitations.     The ALJ gave

20  "partial weight" to Dr. Parsa's opinion "to the extent County Behavioral Health records support [the

21  ——————————————

22    [5]   A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated
    with respect only to psychological, social, and occupational functioning, without regard to impairments
23    in functioning due to physical or environmental limitations.  Diagnostic and Statistical Manual of Mental
    Disorders 32 (4th ed. 2000) ("DSM-IV").  The most recent edition of the DSM "dropped" the GAF scale,
24    citing its "conceptual lack of clarity" and "questionable psychometrics in routine practice."  Diagnostic
    and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

25

26    [6]   A GAF score in the range of 51-60 indicates moderate symptoms or moderate difficulty in
    social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).  DSM-
27    IV 34.   A GAF score in the range of 41-50 indicates serious symptoms (e.g., suicidal ideation,
    obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school
28    functioning (e.g., no friends, unable to keep a job).  DSM-IV 34.

1  RFC]." [AR at 24.] Otherwise, the ALJ found Dr. Parsa's findings internally "inconsistent":

2      On one hand, [Dr. Parsa] reported moderate to marked limitations in work-related
3      mental abilities, yet on the other hand, he reported [plaintiff] had at least partial
       response to medication, and "good" ability to understand, remember and carry out
       very short and simple instructions, and adhere to basic standards of neatness and
4      cleanliness. She likewise had "fair" capacity to remember work-like procedures,
       maintain attention for 2-hour increments, maintain regular attendance and be
5      punctual with in [sic] customary[,] usually strict tolerances, sustain an ordinary
       routine without special supervision, work in coordination with or proximity to others
6      without being distracted by them, complete a normal workday and workweek without
       interruptions from psychologically based symptoms, ask simple questions or request
7      assistance, get along with coworkers or peers without unduly distracting them, and
       in several other areas. She further had "fair" abilities and aptitudes required to
8      perform semiskilled and unskilled work, yet poor to no capacity to interact
       appropriately with the general public and maintain socially appropriate behavior.
9      She had only slight restriction of activities of daily living, often deficiencies of
       concentration, persistence or pace, marked difficulties in maintaining social
10     functioning, and repeated episodes of deterioration or decompensation in work or
       work like settings. Dr. Parsa opined [plaintiff] would be absent from work about 3
11     times a month on average due to impairments or treatment.

12  [AR at 21-22 (citations omitted).] The ALJ also noted that the Ventura County Behavioral Health

13  treatment records showed the following:

14     [Plaintiff] improved when she was compliant with prescribed medical treatment,
       including adherence to medication requirements and attendance in therapy.
15     However, she did not appear to attend therapy on a timely basis, as she was
       repeatedly advised to attend group and individual therapy and the previous and
16     current medical record shows "no-shows" for scheduled therapy appointments. In
       June 2010, she specifically reported improvement on Celexa.
17

18  [AR at 24.] The ALJ gave "persuasive weight" [id.] to the opinion of consultative examiner Minh-

19  Khoi Duong, M.D., who opined that plaintiff had no functional limitations as a result of her mood

20  disorder, NOS [AR at 340], and to the opinion of non-examining medical consultant Preston Davis,

21  Psy.D., who opined that plaintiff had mild functional limitations and no severe impairment. [AR at

22  350, 352.]

23      The Court concludes that the ALJ's finding that Dr. Parsa's findings were inconsistent is not

24  supported by substantial evidence. Dr. Parsa's finding of moderate to marked limitations in work-

25  related mental abilities is not necessarily inconsistent with plaintiff's partial response to medication,

26  ability to understand, remember, and carry out very short and simple instructions, ability to keep

27  neat and clean, and "fair" abilities, i.e., "significantly limited but not precluded," in nineteen out of

28

1  twenty-five areas of workplace functioning.  [AR at 441, 443-45, 447, 449.]  Similarly, significantly

2  limited abilities and aptitudes to perform semiskilled and unskilled work is not necessarily

3  inconsistent with a "poor" ability -- defined as "[n]o useful ability to function" [AR at 449] -- to

4  interact appropriately with the general public, and maintain socially appropriate behavior.  [AR at

5  444-45, 449.]  Other than this conclusory finding of internal inconsistency, the ALJ failed to

6  specifically explain *how* Dr. Parsa's findings were inconsistent.  Accordingly, this was not a specific

7  and legitimate reason for rejecting Dr. Parsa's treating opinion.  See Day v. Weinberger, 522 F.2d

8  1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a

9  specific quantum of supporting evidence.").

10         The Commissioner argues that the ALJ "accepted some limitations" consistent with Dr.

11  Parsa's opinion, when she included RFC limitations to simple, repetitive tasks, with no greater than

12  occasional interaction with supervisors, coworkers, and the public, and no high-paced production

13  quotas.  [Opp'n at 4 (citing AR at 23).]  However, while this may be consistent with the ALJ giving

14  Dr. Parsa's opinion "partial weight," it does not solve the issue of the ALJ's implicit rejection of

15  portions of Dr. Parsa's opinion without identifying those portions she rejected, or providing specific

16  and legitimate reasons supported by substantial evidence for that rejection.  See Carmickle, 533

17  F.3d at 1164.

18         The ALJ also noted that the Ventura County Behavioral Health treatment records show

19  improvement when plaintiff complied with prescribed medical treatment.  [AR at 21, 24.]  However,

20  an ALJ must consider all of the relevant evidence in the record and may not point to only those

21  portions of the records that bolster her findings.  See, e.g., Holohan v. Massanari, 246 F.3d 1195,

22  1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's

23  records while ignoring others).  As the Ninth Circuit recently explained, "[c]ycles of improvement

24  and debilitating symptoms are a common occurrence, and in such circumstances it is error for an

25  ALJ to pick out a few isolated instances of improvement over a period of months or years and to

26  treat them as a basis for concluding a claimant is capable of working."  Garrison, 759 F.3d 995,

27  1017 (citing Holohan, 246 F.3d at 1205); see also Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir.

28

2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in Dr. Tate's treatment notes.  Those notes show that although Scott had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01); see also Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Here, plaintiff continued to report ups and downs, auditory hallucinations, and panic attacks, even when she was compliant with treatment. [See, e.g., AR at 438-39, 452, 454.] Indeed, on the same date that she reported that Celexa was helping her, she also reported that she had heard voices a few days prior telling her to harm her girlfriend. [AR at 439.] Accordingly, the fact that treatment records show some improvement is not a specific and legitimate reason, supported by substantial evidence, for rejecting a portion of Dr. Parsa's opinion.

Based on the foregoing, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for giving Dr. Parsa's opinion only "partial weight."  Remand is warranted on this issue.[7]

/

/

---

[7]   To the extent plaintiff argues that the ALJ "erred in asserting Dr. Parsa only treated plaintiff for two months," and noted that Dr. Parsa did not consider the impact of substance abuse in rendering her opinion [PB at 3-6], plaintiff's argument fails.  Although these findings were made in the original 2011 decision [AR at 136], the ALJ did not make or adopt those findings in the April 2013 decision.

**B.     PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY AND HER ABILITY TO PERFORM THE JOBS CITED BY THE VOCATIONAL EXPERT**

Plaintiff argues that the "RFC finding does not encompass all limitations supported by the record and is not supported by substantial evidence." [PB at 6-7.] She argues that the ALJ erred by not including Dr. Parsa's opinions in the RFC, and by including the opinions of Dr. Duong and Dr. Davis, which do not support the ALJ's RFC finding. [PB at 7-8.] Therefore, plaintiff argues, the hypothetical to the VE was inadequate and cannot be relied upon. [PB at 8.]

In determining a claimant's disability status, an ALJ has the responsibility to determine the claimant's RFC after considering "all of the relevant medical and other evidence" in the record. 20 C.F.R. §§ 416.945(a)(3), 416.946(c). "Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine, 574 F.3d at 690. Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.'" Id. (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original)). See also Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) ("Because the hypothetical was incomplete, it does not constitute competent evidence to support a finding that claimant could do jobs set forth by the vocational expert.").

Because the case is being remanded for reconsideration of Dr. Parsa's opinion, which may affect the ALJ's findings regarding the functional limitations resulting from plaintiff's impairments, on remand the ALJ shall also reconsider plaintiff's RFC.

Plaintiff also contends that the ALJ erred in relying on the opinions of Dr. Duong and Dr. Davis to determine her RFC because neither Dr. Duong nor Dr. Davis reviewed plaintiff's medical records prior to rendering their opinions. [PB at 7-8.] The ALJ gave the opinions "persuasive weight," finding them "credible" and "based on supportability with medical signs and laboratory findings; consistency with the record; and areas of specialization." [AR at 24.] Here, the opinions of Dr. Duong and Dr. Davis were formulated before plaintiff started seeing a psychiatrist [AR at 338], and without reviewing any of plaintiff's treatment records, including the records from Ventura County Behavioral Health. As such, Dr. Duong's examination is little more than a "snapshot"

assessment of plaintiff's condition at the point in time in September 2009 that she presented to him for evaluation.  See Rodriguez v. Colvin, 2014 WL 5305722, at *2 (C.D. Cal. Oct. 15, 2014) (holding that where plaintiff's condition was such that her symptoms would wax and wane, "the results of a single examination by a consultant cannot stand as substantial evidence, for they reveal only what took place on that date," and noting that "if ever there was a value to the notion of relying on a longitudinal relationship -- the kind a treating physician enjoys with his patient, and one reason that opinions of treating physicians are given greater weight than opinions of consultants . . . it is with a disease that manifests itself differently over time") (citing Garrison, 759 F.3d at 1017).  In addition, the ALJ failed to state how the opinions of Dr. Duong and Dr. Davis were supported by medical signs and laboratory findings, and how they were consistent with the record.

Based on the foregoing, the ALJ shall reconsider plaintiff's RFC, and shall determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.  Remand is warranted on this issue.

## C.    THE ALJ'S CONSIDERATION OF LAY WITNESS TESTIMONY

On remand, the ALJ was directed to address the third-party report of plaintiff's friend, Tyasha Johnson.  [AR at 144.]  Plaintiff argues that the ALJ failed to properly assess the statements of Ms. Johnson.[8]  [PB at 8-9.]  The Court agrees.

"In addition to evidence from . . . medical sources, . . . [an ALJ] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [her] ability to work."  20 C.F.R. § 416.913(d).  Such other sources include "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy."  Id.  Thus, "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities

---

[8]    Ms. Johnson is referred to as "Ms. Jackson" in Plaintiff's Brief [PB at 8], but the record indicates that the witness' name is Tyasha Johnson.  [AR at 82-83, 275.]

1   have routinely been treated as competent evidence." <u>Sprague v. Bowen</u>, 813 F.2d 1226, 1232

2   (9th Cir. 1987).   An ALJ may reject lay testimony only for specific reasons germane to each

3   witness. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993).

4         Ms. Johnson testified on April 15, 2013, that she had been living with and taking care of

5   plaintiff for nine years.  [AR at 83.]  She testified, among other things, that plaintiff "gets really

6   depressed," cannot accept criticism, hears voices, deliberately "cuts" herself about once a month,

7   and experiences mood swings. [AR at 84-89.] In a July 12, 2009, Function Report -- Adult -- Third

8   Party, Ms. Johnson indicated that plaintiff has sleeping problems [AR at 276-77]; watches

9   television for a few hours in the day [AR at 279]; goes to the store once a week, but needs

10  someone to accompany her [<u>id.</u>]; and cannot pay attention.  [AR at 280.]

11        The ALJ noted that "[r]esponses to a third-party report in July 2009 by [plaintiff]'s girlfriend,

12  Tyasha Johnson, corroborate the allegations of [plaintiff]." [AR at 20.]  The ALJ summarized Ms.

13  Johnson's Function Report, noting that Ms. Johnson indicated that plaintiff was "significantly

14  limited on a daily basis." [AR at 20-21.]  The ALJ also summarized Ms. Johnson's testimony.  [AR

15  at 25.]

16        As plaintiff argues, the ALJ did not provide any specific reasons for discounting Ms.

17  Johnson's oral and written testimony.  [PB at 8-9.]  The Commissioner argues that the ALJ made

18  a finding that Ms. Johnson's testimony was similar to plaintiff's testimony, and since the ALJ's

19  analysis of plaintiff's credibility was "sufficient," "then the ALJ's analysis of Ms. Johnson's

20  testimony was sufficient."  [Opp'n at 6-7.]

21        While an ALJ may reject lay testimony that was similar to a claimant's testimony if the ALJ

22  expressly stated that she rejected the lay witness' testimony for the same reasons that she had

23  rejected the plaintiff's testimony (<u>Valentine</u>, 574 F.3d at 693-94), here, the ALJ did not specifically

24  provide that reason to discount Ms. Johnson's testimony.   "Long-standing principles of

25  administrative law require [this Court] to review the ALJ's decision based on the reasoning and

26  factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the

27  adjudicator may have been thinking." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1225-

28

1  26 (9th Cir. 2009) (citing <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947)).

2       Accordingly, the ALJ failed to give any reasons to discount Ms. Johnson's lay witness

3  testimony.  The ALJ on remand must reassess the oral and written testimony of Ms. Johnson and,

4  if applicable, provide germane reasons for discounting her testimony.  Remand is warranted on

5  this issue.

6

7  **D.    CREDIBILITY**

8       Plaintiff contends the ALJ improperly discredited her testimony.  [PB at 9.]

9       "To determine whether a claimant's testimony regarding subjective pain or symptoms is

10  credible, an ALJ must engage in a two-step analysis."  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028,

11  1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

12  objective medical evidence of an underlying impairment 'which could reasonably be expected to

13  produce the pain or other symptoms alleged.'"  <u>Id.</u> at 1036 (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d

14  341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may

15  reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence

16  of malingering, or (2) expressing clear and convincing reasons for doing so."  <u>Benton v. Barnhart</u>,

17  331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility

18  include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's

19  testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities;

20  (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the

21  nature, severity, and effect of the symptoms of which the claimant complains.  <u>See</u> <u>Thomas v.</u>

22  <u>Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); <u>see</u> <u>also</u> <u>Ghanim</u>, 763 F.3d at 1163; 20 C.F.R. §

23  416.929(c).

24       Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ

25  did not find "affirmative evidence" of malingering [<u>see</u> <u>generally</u> AR at 25-26], the ALJ's reasons

26  for rejecting a claimant's credibility must be specific, clear and convincing.  <u>Burrell v. Colvin</u>, 775

27  F.3d 1133, 1140 (9th Cir. 2014) (citing <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012)).

28

"General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. at 1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (citation and internal quotation marks omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, the ALJ found plaintiff's allegations "partially credible," but "not credible to the extent of establishing disability":

> [Plaintiff] has continued to disregard medical advice by failing to exercise on a regular basis, despite her allegations of disabling obesity and knee pain. In addition, she continues to fail appointments, labeled as "no-shows", and has allowed herself to run out of psychiatric medication as late as January 2013. [Plaintiff]'s history of noncompliance with medical advice is well established, based on the previous decision noting her failure to attend group therapy, and her failure to attend individual therapy, with practitioner Dennis Wadson, who was specifically recommended. Importantly, as previously discussed, was the fact that when she was compliant with prescribed treatment, her mental health improved. Therefore, repeated noncompliance with medical advice has contributed greatly to any relapses of her condition. Her credibility is further brought into question based on inconsistencies in the record, such as her report to the consultative examiner that she had only a 7th grade education, and her earlier report to treating sources that she had a GED. Such inconsistency, considered together with her long history of criminal offenses and incarceration, tend to diminish the veracity of her allegations.

> Despite her testimony at the first hearing and her current testimony describing excessive sleep, sometimes sleeping up to 14 hours per day, [plaintiff] reported to the consultative examiner she independently performed all self-care activities of daily living, and her activities of daily living were otherwise unaffected by psychiatric problems. Treating source progress notes in June 2010 further reflect she was independent in activities of daily living. While not controlling, these activities are generally inconsistent with disability and consistent with the ability to perform work. Moreover, in contrast to her testimony at the previous and current hearing regarding sleeping for days at a time, treating source records in Exhibit 8F suggest much higher functioning, with only vague descriptions of auditory hallucinations. At the current hearing, she admitted no longer having auditory hallucinations for approximately 1 year. This is consistent with the discussion in the previous decision of the record showing hallucinations stopped when she was medication compliant. Despite her previous and current testimony of debilitating side effects from

16

medication, there is no clear documentation of sedation side effects, although there is minimal mention of back spasms and weight gain with Trazodone.  Nonetheless, as discussed above, despite medication adjustments with documented improvement, there are several instances when she unjustifiably stopped taking medication because she was "depressed", or she simply allowed herself to run out of medication.

[AR at 25-26 (citations omitted).]

Having carefully reviewed the record, the Court concludes that the ALJ's credibility determination is not supported by substantial evidence.

### 1.    Noncompliance with Medical Advice

In determining a claimant's credibility, an ALJ may consider an "unexplained or inadequately explained" failure to follow a prescribed course of treatment.[9]  See Molina, 674 F.3d at 1112; see also id. at 1113-14 ("[Plaintiff]'s failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of [plaintiff]'s . . . testimony.").

Here, the ALJ noted that the record indicates plaintiff "continues to fail appointments." [AR at 25.]  The treatment records do indicate instances where plaintiff did not show up for her scheduled appointments in January 2011, September 2011, August 2012, November 2012, and February 2013.[10]  [See, e.g., AR at 429, 451, 457-59, 461.]  However, plaintiff testified as to the difficulty she has getting to her appointments, i.e., because she is scared to leave the house, she has to schedule her appointments when Ms. Johnson can go with her. [AR at 75.]  Additionally, from September 2009 through January 2013, plaintiff presented at approximately twenty-one appointments [see AR at 420-62], missing only five -- and may have been incarcerated for at least

---

[9]    To the extent the ALJ finds that plaintiff's failure to exercise on a regular basis in order to lose weight impacts on her credibility [see AR at 25 ("P]laintiff has continued to disregard medical advice by failing to exercise on a regular basis despite her allegations of disabling obesity and knee pain")], this reason is not persuasive.  See, e.g., Orn, 495 F.3d at 637-38 (a claimant's "failure to follow treatment for obesity tells us little or nothing about a claimant's credibility").

[10]    The Court notes that plaintiff was incarcerated at the time of the March 4, 2013, hearing, but there is no indication in the record when plaintiff began that incarceration.  [AR at 97.]

1   one of the appointments she failed to attend.  [See supra note 9.]  Accordingly, this was not a clear

2   and convincing reason for discounting plaintiff's credibility.

3          The ALJ also noted that plaintiff failed to attend group and individual therapy, even though

4   therapy was recommended.  [AR at 25.]  The treatment records indicate referrals to therapy in

5   December 2009 [AR at 363], June 2010 [AR at 439], and April 2011 [AR at 426], and that plaintiff

6   had not attended therapy as encouraged in December 2010.  [AR at 432.]  However, a July 2010

7   treatment record indicates that plaintiff should "continue group therapy" [AR at 438], and a January

8   28, 2011, treatment record indicates that plaintiff "wants to continue group therapy," and that she

9   left therapy because she became homeless.  [AR at 428.]  At the hearing in August 2011, plaintiff

10  testified that besides seeing Dr. Parsa at Ventura County Behavioral Health, she had been seeing

11  a therapist there once a month "for the last couple of years."  [AR at 107.]  Thus, the record

12  indicates that plaintiff attended therapy at times, and may have temporarily left therapy primarily

13  due to her living situation.  Accordingly, this was not a clear and convincing reason for discounting

14  plaintiff's credibility.

15         The ALJ further noted that when plaintiff was compliant with her medication, her mental

16  health improved.  [AR at 25 (citing AR at 439).]  The effectiveness of a claimant's medications is

17  a proper reason to evaluate the credibility of a claimant's allegations concerning her subjective

18  symptoms.  See Bunnell, 947 F.2d at 346 (quoting Social Security Ruling ("SSR")[11] 83-13).  Here,

19  in support of her finding that plaintiff's mental health improved when plaintiff was compliant with

20  her medication, the ALJ cited a treatment record that states, "Celexa is helping me."  [AR at 25,

21  439.]  The ALJ misstates the record and her reason is not supported by substantial evidence.  See

22  Lingenfelter, 504 F.3d at 1036 (explaining that reasons for discrediting plaintiff that misstate the

23  record "provide[ ] no support for the [ALJ's] credibility finding [ ]"); Reddick, 157 F.3d at 722-23 ("In

24  essence, the ALJ developed his evidentiary basis by not fully accounting for the context of

25

26         [11]   "SSRs do not have the force of law.  However, because they represent the Commissioner's
    interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs
27  if they are inconsistent with the statute or regulations."  Holohan, 246 F.3d at 1202 n.1 (internal
    citations omitted).
28

materials or all parts of the testimony and reports.  His paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").  For example, in the record cited by the ALJ, plaintiff also reported that she heard voices two days earlier telling her to harm her girlfriend. [AR at 439.]  At her next appointment, plaintiff reported that she was "still up and down," and complained of feeling anxious. [AR at 438.]  A review of the record as a whole reveals that, despite brief periods of improvement due to medication, plaintiff continued to experience symptoms including panic attacks, anxiety, racing thoughts, low sleep need, and fatigue. [AR at 362-63, 431, 433.]  See also Holohan, 246 F.3d at 1205 ("That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); Garrison, 759 F.3d 995, 1017 (error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working).  Thus, the ALJ's finding that plaintiff's mental health improved when she was compliant with her medication is not supported by substantial evidence and is not a clear and convincing reason for rejecting plaintiff's credibility.

### 2.    Inconsistent Statements and Criminal History

The ALJ discounted plaintiff's credibility based on inconsistent statements about her education and plaintiff's lengthy criminal history. [AR at 25.]  "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).  Regarding plaintiff's statements about her education, the ALJ noted that plaintiff told the consultative examiner that she had only a seventh grade education, whereas she told her treating physician that she had a GED.[12]  [Id. (citing AR at 376).]  The Commissioner argues that the statements are inconsistent "because they relate to overall level of education." [Opp'n at 9.]  However, the Court agrees with plaintiff, who argues that reports of having a seventh grade education do not necessarily contradict reports of

---

[12]    The Court notes that plaintiff testified that she completed eighth grade. [AR at 104.]

19

1    earning a GED.  [PB at 10.]

2            Regarding plaintiff's criminal history, plaintiff had a "long history of criminal offenses and

3    incarceration."  [AR at 25.]  Plaintiff testified that she was in prison from 1996 until 2005 for

4    transporting drugs, robbery, petty theft, and assault.  [AR at 104, 338.]  A progress note dated

5    October 26, 2010, indicates that plaintiff was in jail for forty-five days for domestic violence, after

6    she got into a fight with her girlfriend.  [AR at 425, 434, 456.]  Another progress note, this one

7    dated June 10, 2011, indicates that plaintiff got in a fight with her girlfriend, the police "took her,"

8    and she "needs to go to court."  [AR at 425.]  According to plaintiff's counsel, plaintiff was in prison

9    for an unknown offense at the time of her hearing in March 2013.  [AR at 97.]  An ALJ may rely

10   upon a claimant's convictions for crimes of moral turpitude as part of a credibility determination.

11   Albidrez v. Astrue, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (in making a credibility

12   determination, ALJ's reliance on prior felony convictions is limited to convictions involving moral

13   turpitude); see also Hardisty v. Astrue, 592 F.3d 1072, 1080 (9th Cir. 2010) (in ruling on an Equal

14   Access to Justice Act request, the court held the ALJ's credibility determination was substantially

15   justified when it was based, *among other factors*, on the claimant's prior criminal convictions).

16           Here, the ALJ only found that plaintiff had a "long history of criminal offenses and

17   incarceration," which "considered together" with plaintiff's inconsistent statement regarding her

18   education level, tended to "diminish the veracity of her allegations."  [AR at 25.]  The ALJ did not

19   specifically find that plaintiff's criminal convictions involved crimes of moral turpitude.  Moreover,

20   the Court has already rejected the ALJ's attempt to discount plaintiff's credibility based on the

21   alleged inconsistencies in her statements regarding her education level.  Thus, this is not a case

22   where the "government's adverse credibility finding was substantially justified because *all of the*

23   *inferences upon which it rested had substance in the record*," Hardisty, 592 F.3d at 1080

24   (emphasis added), and, standing alone, the Court finds that the ALJ's general reliance on plaintiff's

25   criminal history, without more, does not provide a specific, clear and convincing reason for

26   discounting plaintiff's credibility.

27

28

### 3.      Activities of Daily Living

The ALJ discounted plaintiff's credibility based on her independence in activities of daily living. [AR at 25-26.]  The ALJ noted that plaintiff reported to the consultative examiner that "she independently performed all self-care activities of daily living, and her activities of daily living were otherwise unaffected by psychiatric problems." [AR at 25 (citing AR at 339).]  The ALJ also noted that treatment records in June 2010 "reflect she was independent in activities of daily living." [AR at 25-26 (citing AR at 432).]  The ALJ also noted that "treating source records in Exhibit 8F suggest much higher functioning." [AR at 26.]

An ALJ may discredit testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment."  Id. (citing Turner, 613 F.3d at 1225; Valentine, 574 F.3d at 693).

With respect to her daily activities, plaintiff testified to the following:  she stays at home "all day" because she is scared of getting panic attacks when she goes out; she goes out three or four times a month; when she goes out, she is accompanied by Ms. Johnson; her medications make her hungry and tired; she sleeps about 14 hours a day; she watches TV "all day long"; and she can focus on something for ten minutes.  [AR at 73-77.]  In the Function Report -- Adult, plaintiff indicated that her friend helps her bathe and cooks for plaintiff; plaintiff needs reminders to take her medication; she uses public transportation; she is afraid to go out by herself; she shops once a week for food; she has lost interest in social activities; and she "can't" pay attention.  [AR at 267-72.]

The ALJ relied on the statement by the consultative examiner that plaintiff could independently perform self-care activities of daily living, i.e., she could "eat, sleep, dress, bathe herself, and use the restroom," and that "[o]therwise, [plaintiff]'s activities of daily living are unaffected by psychiatric reasons." [AR at 25-26, 339.]  First, the Court finds that this statement is confusing and ambiguous, as it seems to imply that some of plaintiff's activities of daily living

somehow *may be* affected by "psychiatric reasons."  Second, other than her conclusory statement that plaintiff's activities of daily living are "consistent with the ability to perform work," the ALJ fails to provide any analysis as to how this is so, or even to specify which activities she finds to be consistent with which work-related tasks.  Molina, 674 F.3d at 1113; Burrell, 774 F.3d at 1138. Third, the Court finds that the ALJ also failed to identify specific evidence in Exhibit 8F that was suggestive of plaintiff being "much higher functioning."  See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (holding that daily activities may not be relied upon to support an adverse credibility determination unless the ALJ makes an explicit finding that plaintiff's ability to perform those activities translated into the ability to perform appropriate work activities on an ongoing and daily basis).  In fact, Exhibit 8F generally indicates that plaintiff was arrested for getting into a fight with her girlfriend, thought people were watching her, saw shadows, complained of panic attacks, reported binge eating and purging, slept 2-5 hours a night, experienced racing thoughts, reported feeling depressed, reported that she relapsed on alcohol and became aggressive with her girlfriend, was "up and down," and heard voices.  [AR at 425-27, 430-31, 434-35, 438-39.]

Accordingly, this was not a specific, clear and convincing reason for discounting plaintiff's credibility.

### 4.    Conclusion

In sum, the Court finds that the ALJ failed to provide specific, clear and convincing reasons to discount plaintiff's credibility.  Accordingly, remand is warranted on this issue.

### VI.

### REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke

1  v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must

2  be resolved before a determination can be made, and it is not clear from the record that the ALJ

3  would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

4  appropriate.  See Benecke, 379 F.3d at 593-96.

5      In this case, as discussed above, the ALJ failed to provide legally sufficient reasons for

6  discounting the opinion of plaintiff's treating psychiatrist, for discounting the third-party testimony

7  of Ms. Johnson, and for discounting plaintiff's credibility.  It is not clear from the record if a finding

8  of disability would be required if this evidence were properly evaluated.  Remand is appropriate.

9      In an effort to expedite these proceedings and to avoid any confusion or misunderstanding

10  as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First,

11  because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of

12  plaintiff's treating psychiatrist, the ALJ on remand shall reassess the opinion of Dr. Parsa.  In

13  assessing the medical opinion evidence, the ALJ must provide legally adequate reasons for any

14  portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation

15  for crediting one doctor's opinion over any of the others.  Second, because the ALJ failed to

16  provide germane reasons for discounting the third-party testimony of Ms. Johnson, the ALJ on

17  remand shall reassess Ms. Johnson's testimony and either credit her testimony as true or provide

18  germane reasons for discounting or rejecting her testimony.  Third, because the ALJ failed to

19  provide specific, clear and convincing reasons to discount plaintiff's credibility, the ALJ on remand

20  shall reassess plaintiff's subjective symptom allegations and either credit her testimony as true,

21  or provide specific, clear and convincing reasons, supported by substantial evidence in the case

22  record, for discounting or rejecting any testimony.  Next, if necessary, the ALJ shall reconsider all

23  of plaintiff's limitations in making the RFC determination.  Finally, the ALJ shall determine, at step

24  five, with the assistance of a VE if necessary, whether there are jobs existing in significant

25  numbers in the national economy that plaintiff can still perform.[13]

26

27  [13]  Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff has no past

28  relevant work.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: APRIL 29, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE